I. Leo Glasser, J.
The petitioner instituted a proceeding under the Uniform Support of Dependents Law (Domestic Eolations Law, art. 3-A) in which she alleges that she is the wife of the respondent, that he is the father of the four children named in the petition, and in which she seeks an order of support for *424 herself and her children. She is a resident of Niagara County and the respondent is a resident of' Kings County, New York.
Summoned to appear in the Family Court of Kings County, the respondent filed a verified answer to the petition in which he acknowledged his marriage to the petitioner hut avers that the marriage was procured by duress and he denies paternity of the children. In addition, the respondent requested an examination before trial pursuant to CPLR articles 4 and 31, and subdivision 9 of section 37 of the Domestic Relations Law, to be held at the Family Court of Niagara County, and the respondent also requested a blood grouping test. The Corporation Counsel of the City of New York appeared on behalf of the petitioner pursuant to subdivision 5 of section 37 of the Domestic Relations Law and opposed the respondent’s request for a blood grouping test upon the sole ground that there is no authority in the Uniform Support of Dependents Law (hereafter referred to as U.S.D.L.) for granting such request.
The avowed purpose of the U. S. D. L. is to compel support of dependent wives and children within- and without the State and to provide a procedure for enforcement of support against persons residing in other counties of the State or in other States and territories of the United States having substantially similar reciprocal laws. (Domestic Relations Law, §§ 30, 35; Landes v. Landes, 1 N Y 2d 358, 363 [1956].) The issue presented to the court is whether the provisions of article 3-A of the Domestic Relations Law and article 4 of the Family Court Act are mutually exclusive. Stated differently, may the more detailed provisions of the Family Court Act be resorted to where no provision governing the specific issue is to be found in the U. S. D. L.l
In “ Vincenza ” v. “ Vincenza ” (197 Misc. 1027, 1032 [Dom. Rel. Ct., N. Y. County, 1950]) the court said: “ The boundaries df the New York Uniform Support of Dependents Law cannot be enlarged by the implications of other statutes but are fixed by the four corners of chapter 807 of the Laws of 1949, as amended.” Matter of Bannheim v. Babbitt (48 Mise 2d 310 [Family Ct., Allegany County, 1965]) declined to interpolate section 438 of the Family Court Act in a U. S. D. L. proceeding and denied an application for counsel fees. That case may be deemed to be overruled by Matter of Murdock v; .Settembrim (21 N Y 2d 759 [1968]) in which the Court of Appeals affirmed the award of counsel fees by the Family Court whichi applied .section 438 of the Family Court Act in a proceeding under the U. S. D. L. which contains no provision for counsel fees. In Matter of Fleiseher v. Fleischer (25 A D 2d 901 [3d *425 Dept., 1966], mot. for Iv. to app. den. 18 N Y 2d 577 [1966]) and Matter of Lewis v. Lewis (55 Misc 2d 1092 [Family Ct., Queens County, 1967]) section 447 of the Family Court Act, relating to visitation, was .applied in a proceeding under the U. S. D. L. which makes no provision for orders of visitation.
The broad question has thus been raised before. In Martin v. Martin (58 Misc 2d 459 [Family Ct., Ulster County, 1968]), which declined to interpolate subdivision (c) of section 466 of the Family Court Act in a U. S. D. L. proceeding, the cases were comprehensively analyzed and in the course of his opinion, Judge Elwyh observed (p. 467) that the later decisions “ seem to point in the direction of fully interpolating article 4 of the Family Court Act into the Uniform Support of Dependents Law.” The specific question raised by the facts in this case has not, so far as this court’s research has revealed, been previously considered. The only case the court has found in which a blood grouping test was applied for and granted in a U. S. D. L. proceeding was Matter of Miller (114 N. Y. S. 2d 304 [Children’s Ct., Westchester County, 1952]) in which the respondent, a resident of Connecticut, personally appeared in the New York Court and his request for a blood grouping test was granted without discussion.
Were the parties to this proceeding residents of or domiciled in different States, perhaps the simple answer to the question of paternity raised by the respondent’s denial and to his request for a blood grouping test would be the response given in People ex rel. Johnson v. Johnson (35 Ill. App. 2d 106 [1962]). In that case a proceeding was instituted against a husband under the Uniform Reciprocal Enforcement of Support Act for the support of a minor child. The husband respondent filed an answer stating that he had no knowledge sufficient to form a belief that he was the father of the child. The court held that his answer did not place upon the State the duty to substantiate, by proof, the charge in the complaint before an order could be entered for support. The court reasoned that the presumption of legitimacy arising from the fact that the child was born while the parties were married placed upon the husband the burden of going forward with evidence to make out a prima facie rebuttal.
That answer is a simple but a disquieting one for several reasons. Section 38-a of the Domestic Relations Law provides: ‘ ‘ In any hearing under this act [Domestic Relations Law, §§ 30 — 43] in either an initiating state court or a responding state court, there shall be applicable the same presumptions and *426 other rules of evidence, whether statutory, decisional, or under court rules, as are available to the parties in other civil proceedings or actions brought in that same court.” There are several statutes in New York which authorize an order for a blood grouping test. (Family Ct. Act, §§ 418, 532; CPLB. 3121.) The rule of evidence with regard to such tests which is recognized in this State is that the results of such test may be received in evidence where definite exclusion is established. (Family Ct. Act, § 532.) Such evidence of exclusion is conclusive and rebuts the presumption of legitimacy which would otherwise obtain. (Anonymous v. Anonymous, 1 A D 2d 312 [2d Dept., 1956].) That rule of evidence would be unavailable to the respondent if his request for a blood grouping test were rejected because the U. S. D. L. makes no provision for granting it. In a paternity suit, the respondent’s motion for a blood grouping test must be granted. (Family Ct. Act, § 532; People ex rel. Van Epps v. Doherty (261 App. Div. 86 [3d Dept., 1941].) In a support proceeding under article 4 of the-Family Court Act the granting of a motion by the respondent for a blood grouping test is discretionary. (Family Ct. Act, § 418; Matter of Time v. Time, 59 Mise 2d 912 [Family Ct., N. Y. County, 1969].) Before denying such a motion careful consideration should be given to the astute observation made in Beach v. Beach (114 F. 2d 479 [ C. A. D. C., 1940]). In that case a husband denied paternity in his wife’s suit for maintenance and requested a blood grouping test. In granting his request the court said (p. 482): “If the child is appellee’s, the tests will prove nothing and harm no one. If the child is not his, it would he unjust to prevent him from proving the fact.” (Emphasis added.X The U. S. D. L. makes a rule of evidence available to the respondent, but, being silent as to blood groupihg tests, is perhaps unjust in preventing him from implementing that rule.
The decision in Johnson is disquieting for an additional reason. If a husband, might obtain a blood grouping test were he sued for support under article 4 of the Family Court Act, and thus be able to disprove paternity and avoid an order of support for a child who is not his, he might be denied that opportunity by the simple expedient of the petitioner moving to another jurisdiction and commencing a proceeding under the U. S. D. L. The problem thus presented is one which should be considered by the Legislature.
The parties to this .proceeding are, however, not residents of or domiciled in different States. They both reside in New York, *427 but in different counties. The IT. S. D. L. proceeding is unquestionably available to the petitioner in such a case. (Domestic Relations Law, § 35, subd. 1.) Subdivision 2 of section 37 of the Domestic Relations Law provides: “ If the respondent be a resident of or domiciled in such state and the court has or can acquire jurisdiction of the person of the respondent under existing laws in effect in such .state, .such laws .shall govern and control the procedure to be followed in such proceeding.” The respondent is a resident of New York and the Family Court may send process or other mandate in any matter in which it has jurisdiction into any county of the State for service or execution. (Family Ct. Act, § 154; Domestic Relations Law, § 31, subd. 2.) The court can and in fact has acquired jurisdiction of the person of the respondent, and the existing law of the State shall govern and control the procedure to be followed. The interpolation of the existing law of the State being thus expressly mandated, the respondent’s application for a blood grouping test is granted pursuant to section 418 of the Family Court Act.
In his verified answer the respondent challenges the validity of his marriage, claiming that he participated in the marriage ceremony under threats and coercion. The respondent also requests an examination before trial pursuant to CPLR articles 4 and 31 and subdivision 9 of section 37 of the Domestic Relations Law and requests that such examination be held at the Family Court in Niagara County. His answer will be liberally construed and any technical defect as concerns notices of motion (CPLR 3107) will be ignored. (CPLR 3026.) In his request for an examination of the petitioner, the respondent urges that he be permitted to appear in the Family Court in Niagara County rather than be restricted to the procedure of depositions and written interrogatories provided for by section 37 of the Domestic Relations Law. Indeed, the issues raised by the respondent, namely the invalidity of the marriage by reason of duress (Domestic Relations Law, § 7, subd. 4), and paternity, can hardly be resolved satisfactorily through the medium of depositions and interrogatories. Those issues can best be resolved at a full hearing at which both parties will appear to present evidence and have the opportunity to cross-examine.
Adverting once again to subdivision 2 of section 37 of the of the Domestic Relations Law which directs that the law of the State shall govern and control the procedure to be followed, the invocation of section 174 of the Family Court Act becomes peculiarly appropriate. That section provides: The family court in! a county may for good cause transfer a proceeding *428 to a family court in any other county where the proceeding might have been originated ’ (See, also, N. Y. Const., art. VI, § 19, subd. h.) This proceeding might have been originated in Niagara County, under section 421 (subd. [d]) of the Family Court Act, and therefore, good cause having been determined to exist for the reasons previously indicated, this proceeding is transferred to the Family Court in Niagara County for a full hearing. (Matter of Silvestris v. Silvestris, 24 A D 2d 247 [1st Dept., 1965].) Accordingly, the respondent’s motion for an oral examination before trial is denied as is his prayer that the petition be dismissed.
Mention might also be made of the fact that a temporary order of support was made in this proceeding on April 26, 1972 directing the respondent to pay $40 biweekly beginning May 12, 1972. Ordinarily, such an order would be improper (Aberlin v. Aberlin, 3 A D 2d 417 [1st Dept., 1957], app. dsmd. 3 N Y 2d 934 [1957]); but, applying section 434 of the Family Court Act through subdivision 2 of section 37 of the Domestic Relations Law, the temporary order was, in this cage, properly made and that order is hereby continued.
Accordingly, this proceeding is respectfully transferred to the Family Court of Niagara County which is requested to fix a date for a hearing upon due notice to the parties and their attorneys.