OPINION OF THE COURT
Kathryn McDonald, J.
Petitioner in this paternity proceeding is the natural *10 mother. Respondent has denied paternity, and both parties have retained counsel. A standard blood grouping test, ordered by the court on September 20, 1979 failed to exclude respondent. Petitioner now moves for a second blood grouping test, known as the HLA test, on the ground that "it has been recognized by the Courts that the HLA test can establish 'the statistical probability that the Respondent is the father as 99.4 percent. Matter of Harris, N.Y.L.J. September 10, 1979, p. 15, c. 6.”’ Petitioner has not applied to have the results of the test admitted into evidence, but only to have respondent ordered to submit to the test. Respondent opposes the motion pointing out that, "as petitioner concedes, this test is only for the benefit of the respondent and cannot be introduced into evidence. The Respondent does not wish to avail himself of that benefit.”
Section 532 of the Family Court Act states that: "The court, on motion of any party shall advise the parties of their right to a blood test and shall order the mother, her child and the alleged father to submit to one or more blood grouping tests * * * to determine whether or not the alleged father can be excluded as being the father of the child” (emphasis added). The statute also states that the results of the tests are admissible "only in cases where definite exclusion is established.”
Under the statute, then, only two things may be established by the blood test: either that the alleged father is not, in fact, the biological father, or that paternity remains to be determined. The alleged father benefits from the first result, and, to a considerably lesser degree, the mother benefits from the second. Here, the petitioner mother has already obtained the only benefit to her case the blood test allows: the fact of paternity is still in issue.
It has been argued that the HLA test, with improved testing methodology, can reliably indicate not only a given male’s exclusion but also, his inclusion, with approximately 95% accuracy. (Matter of Goodrich v Norman, 100 Misc 2d 33, Lascaris v Lardeo, 100 Misc 2d 220, Matter of Harris, supra.) Nevertheless the statute, first enacted over 40 years ago, allows only evidence of "definite exclusion”. A man who is not definitely excluded by the HLA test is virtually certain to be the father, given other credible testimony or evidence of a relationship with the natural mother. Therefore it would appear that what is in fact sought in this motion is evidence *11 that is presently inadmissible that the HLA test indicates that respondent is the actual father. Clearly, a court which is asked to order the HLA test will deduce from a subsequent failure to introduce exclusory results that the alleged father is indeed the father. The issue, then, can be stated: may the petitioning mother compel the respondent alleged father to submit to the HLA test, where the respondent has not been excluded by the standard blood grouping test? For reasons discussed below, the court rules that under the statute as presently enacted she may not.
Although the statute uses the phrase "one or more blood grouping tests” it appears that what was anticipated is the need for a repeated test, where the first is subject to challenge. Thus, where a first test excluding the respondent from paternity had been performed three years before the trial date, the court, in granting the petitioner mother’s motion for a new test, reasonably concluded that "[g]iven the long passage of time * * * the simplest and most reliable method of confirming its accuracy is through a second blood test performed by another doctor. This court is cognizant that multiple testing has, on occasion, disclosed erroneous initial findings of exclusion resulting from subpar testing procedures.” (Matter of Carol B. v Felder R. J., 94 Misc 2d 1015, 1018.) Significantly, the moving party in Carol B. was the petitioner mother, whose interest in a new test was clear: the exclusory result of the first test would defeat her petition, but a failure to exclude would leave the question open. The court ruled that under 1976 amendments to section 532 (highlighted above) a request by either party for blood tests "shall” be honored by the court. Carol B., however, is distinguishable from the present petition both as to the interest of the moving party and the nature of the relief sought.
The blood grouping test has been and remains primarily for the benefit of the respondent alleged father who denies paternity. (Matter of June B. v Edward L., 69 AD2d 612; Matter of Geraldine K. v Elliot D. B., 99 Misc 2d 720.) Until 1977, the right to the test was the alleged father’s alone. Recent statutory changes (L 1976, ch 665) making the test available "on motion of any party” would appear to be simply a recognition of the fact that the male for whose benefit the test is intended may now be either the petitioner or the respondent. Significantly, although the right to the test is now either party’s, the purpose is still only to exclude the alleged father, and only the *12 alleged father is compelled to pay for it. It would appear that the 1976 changes in section 532 were addressed primarily to the end of allowing putative fathers to be petitioners in paternity proceedings, in recognition of evolving rights of unwed fathers following the 1972 Supreme Court decision Stanley v Illinois (405 US 645). The 1976 amendments did not deal with the admissibility of inclusory test results. The Legislature has since been urged to amend section 532 so as to allow inclusory results of HLA tests to be admitted (see cases cited, infra), and this court likewise urges consideration of amendments to allow the HLA test results into evidence at the request of either party.
Cases cited by petitioner in support of her request for a court order directing respondent to submit to the HLA test are inapposite. The court’s research reveals that in each case in which the test was ordered, it was with the alleged father’s consent, and usually at his request. Naturally a petitioner father who wishes to prove his paternity by clear, convincing and entirely satisfactory evidence will seek to have inclusory results submitted pursuant to stipulation between the parties. Here, however, the alleged father actively opposes the motion.
Since it is clear that the court may not rely on inclusory test results (Matter of Cardinal v Green, 30 AD2d 711; Matter of Harris, NYLJ, Sept. 10, 1979, p 15, col 6, supra) and that only such results would be of benefit to petitioner, the court concludes there is no valid legal basis for her motion, and therefore denies it in its entirety.