OPINION OF THE COURT
Richard D. Huttner, J.
The petitioner in this proceeding seeks an order declaring his paternity of C.A.R. born June 23, 1978, and M.J.R. born July 14, 1980, and names as respondents, the mother of the children and her husband. The respondents were married on September 25, 1977, and since that date have lived together continuously as husband and wife. The parties and children submitted to the standard Landsteiner blood grouping test, which failed to exclude either the petitioner or the respondent, husband, as father of the children.
The court has before it petitioner’s motion for a second blood test, and respondent’s cross motion for a dismissal of the petition.
The petition, which was not prepared on the official court *507 form, simply requests that petitioner be adjudicated the children’s natural father, and there is no request, as is contained in the official court form, to support the children. Therefore, the sole relief prayed for in this petition is in the nature of a declaratory judgment, as to the status of the children’s paternity. The Family Court, being a court of limited jurisdiction, is without power to entertain actions for declaratory judgments. (Loeb v Loeb, 14 AD2d 270.) The proper forum for such relief is the Supreme Court. (Matter of Salvatore S. v Anthony S., 58 AD2d 867, citing Commissioner of Public Welfare v Koehler, 284 NY 260; Matter of Alvin B. v Denise C., 85 Misc 2d 413; Matter of Czajak v Vãvonese, 104 Misc 2d 601.)
A filiation proceeding in the Family Court is a statutory device created principally to “resolve problems of support.” (Report of Joint Legis Committee on Court Reorganization, No. 2, The Family Court Act, p 20.) Historically, paternity proceedings were aimed at protecting “the welfare of the child” and “providing for indemnification”. (Schaschlo v Taishoff, 2 NY2d 408, 411; Matter of J., 50 AD2d 890; Matter of Kehn v Mainella, 40 Misc 2d 55.) The failure of the petitioner to request an order of support places the action outside the Family Court’s limited paternity jurisdiction.
The petitioner is requesting a court order directing that the parties submit to a second, more sophisticated blood test, to wit: a Human Leukocyte Antigen (HLA) test. It is petitioner’s contention that this test, because of its higher degree of accuracy, will exclude the mother’s husband as being the biological father of the children. Such proof would help overcome one of the strongest presumptions known to our law, that of the legitimacy of children born to married parents. (Matter of Findlay, 253 NY 1; Matter of Gray v Rose, 32 AD2d 994.)
In the absence of a consent by the parties, additional blood tests in paternity proceedings may be ordered only if in the court’s discretion the interest of justice will be furthered. (Matter of Moore v Astor, 102 Misc 2d 472; Lascaris v Lardeo, 100 Misc 2d 220; Matter of Carol B. v Felder R. J., 94 Misc 2d 1015; Jane L. v Rodney B., 103 Misc 2d 9.) The *508 petitioner’s desire to utilize the results of any blood test to exclude the mother’s husband as the father runs counter to the express provisions of section 532 of the Family Court Act. This statute provides clearly that blood tests may be admitted in evidence solely to exclude the “alleged father”. In this case, the respondent husband is not alleged in the petition to be the father of the children, therefore, any blood test results with regard to the respondent husband would be statutorily inadmissible. Accordingly, thére is no interest of justice which can be served by ordering further blood tests.
In an effort to overcome the restrictions contained in section 532 of the Family Court Act, petitioner further requests that the additional blood test be ordered instead pursuant to CPLR 3121, which provides, inter alia: “any party may serve notice on another party to submit to a * * * blood examination”. Subdivision (a) of section 165 of the Family Court Act precludes the use of the CPLR in this court when there is a suitable procedure provided for in the Family Court Act, thus leaving this court powerless to make such an order.
It is this court’s opinion that the petitioner may find both substantive and procedural relief in the Supreme Court that is unavailable to him in this court, since the Supreme Court has jurisdiction tor render a declaratory judgment with respect to the children’s 'paternity. (Salvatore S. v Anthony S., 58 AD2d 867, supra; Swanson v Karner, 77 AD2d 811.)
It is this court’s further opinion that the aforesaid restrictions that bind this court with regard to ordering an additional blood test in a Family, Court proceeding, are inapplicable to a Supreme Court action, where the only statute concerning admissibility of blood tests is CPLR 3121. As previously stated, CPLR 3121 contains no specific restrictive language analogous to section 532 of the Family Court Act, as to the use in evidence of blood test results. Examination of the reported cases wherein blood tests were ordered pursuant to CPLR 3121 indicate that the results were used solely to exclude paternity. One should not be misled into believing that this is an expression of an evidentiary rule. *509 Rather, it is reflective of the fact that the only blood test available when these cases were decided was the Landsteiner blood grouping test. This test is relevant only to exclude paternity and is without scientific value to establish paternity. Now, with the advent of the more sophisticated HLA test and related genetic blood tests, this limitation no longer applies (Jane L. v Rodney B., 103 Misc 2d 9, supra; Lascaris v Lardeo, 100 Misc 2d 220, supra; Matter of Goodrich v Norman, 100 Misc 2d 33; Matter of Harris, NYLJ, Sept. 10, 1979, p 15, col 6; see, also, Camden County Bd. of Social Servs. v Kellney, 24 FLR 2412 [NJ] ; see, also, Terasaki, HLA in Paternity Testing, 128 Western J Medicine 48.) This test may be used to exclude paternity with a 99.8 % degree of certainty. It also has a high degree of probative value in affirmatively establishing paternity. (See 1 Schatkin, Disputed Paternity Proceeding, ch 8 [rev ed].)
Should the petitioner choose to proceed in the Supreme Court, then of course the final arbiter of the evidentiary use to be made of the HLA test would be that court. While the law should proceed with deliberation it need not mark time while science marches on. Unfettered by the anachronistic statute handcuffing this court (Family Ct Act, § 532), it is hoped that the Supreme Court will recognize the valuable scientific use of the HLA test and exercise an expanded modernistic approach to its application to paternity proceedings.
Accordingly, it is this court’s decision to grant the cross motion to dismiss the within petition without prejudice.